UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID M. WILSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | CASE NO. C12-1532JLR<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS |

## I.   INTRODUCTION

Currently before the court is Defendants Bank of America, N.A. ("BANA") and Deutsche Bank National Trust Company's ("DBNTC") motion to dismiss Plaintiffs David M. Wilson and Cheryl M. Wilson's ("the Wilsons") complaint pursuant to Federal

ORDER- 1

Rule of Civil Procedure 12(b)(6).[1] (Mot. (Dkt. # 6).) The Wilsons oppose the motion. (Resp. (Dkt. # 10).)[2]

Having considered the submissions of the parties, the balance of the record, and the relevant law, and no party having requested oral argument, the court GRANTS Defendants' motion to dismiss (Dkt. # 6). The court DISMISSES the Wilsons' complaint against BANA and DBNTC WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Wilsons lack Article III standing. This court does not, therefore, have subject matter jurisdiction over their claim. The court declines granting the Wilsons leave to amend their complaint because, even if the Wilsons had standing, amendment of the complaint would be futile. The Wilsons' sole cause of action is fraud and they have pleaded themselves out of a complaint for fraud by admitting that they did

---

[1] The Wilsons named "Deutsche Bank National Trust Company TRUST GSR2007-OA1" as defendant. (Compl. (Dkt. # 1) at 1.) BANA and DBNTC's motion instead names "Deutsche Bank National Trust Company, As Trustee for the Holders of GRS Mortgage Loan Trust 2006-OA1" as defendant. (Mot. (Dkt. # 6) at 1.) BANA and DBNTC assert that the Wilsons incorrectly named the proper DBNTC defendant. (Reply (Dkt. # 11) at 2.) The record itself is contradictory. The Assignment of Deed of Trust states that MERS assigned all beneficial interest in the Deed of Trust to "Deutsche Bank National Trust Company, As Trustee for the Holders of GRS Mortgage Loan Trust 2006-OA1." (Compl. Ex. G (Assignment of Deed of Trust).) The Assignment of Deed of Trust is dated May 11, 2012. Cheryl Wilsons' Declaration, however, contains a letter from BANA to the Wilsons, dated July 3, 2012, stating that their loan's investor is "Deutsche Bank National Trust Company, As Trustee for the Holders of GRS Mortgage Loan Trust 2007-OA1." (Wilson Decl. (Dkt. # 10-1) Ex. A.) The court need not rule on whether the 2006 or 2007 Trust is the proper defendant, as the issue does not change the outcome of the motion.

[2] The Wilsons also named Wells Fargo, N.A. as a defendant. Wells Fargo, N.A. did not join BANA and DBNTC's motion. (Mot. at 1). Accordingly, "Defendants," where used in this order, refers only to BANA and DBNTC.

not rely on the allegedly fraudulent document.  Further, even if the Wilsons had properly pleaded reliance, their theories supporting the fraud claim are not legally cognizable.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On or about February 23, 2007, the Wilsons obtained a $216,000 mortgage loan ("the Loan") to finance the purchase of real property at 11327 30th Avenue S.E., Everett, Washington 98208 ("the Property").  (Compl. (Dkt. # 1) ¶ 1; *id.* Ex. F (Deed of Trust).)[3]  The deed of trust securing the loan ("Deed of Trust") identifies Countrywide Bank, N.A. as the lender, Commonwealth Land Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, "acting solely as a nominee for Lender and Lender's successors and assigns."  (*Id.* Ex. F.)  By a document recorded on May 11, 2012 ("Assignment"), MERS assigned its beneficial interest under the Deed of Trust, "together with the note(s) and obligations therein described," to "Deutsche Bank National Trust Company, as trustee for holders of the GSR Mortgage Loan Trust 2006-OA1."  (*Id.* Ex. G (Assignment of Deed of Trust).)  BANA began servicing the loan in May 2009.  (*Id.* ¶ 4.)

The Wilsons defaulted on the Loan in October 2011.  (*See id.* ¶ 5)  Although the Wilsons allege that BANA recorded the Assignment "in an attempt to illegally move forward with foreclosing on Plaintiffs [sic] property," (*Id.* ¶ 8), the Wilsons' complaint

---

[3] In evaluating a motion to dismiss, the court may consider any exhibits attached to the complaint.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).  The Wilsons attached the Deed of Trust and Assignment to their complaint.  (Compl. Ex. F, Ex. G.)

does not allege BANA or any other entity has taken steps to foreclose on the Property, such as by serving a notice of default on the Wilsons. (*See generally id.*)

On November 30, 2011, the Wilsons filed a lawsuit against "Bank of America NA Trust GSR2007-OA1" in Snohomish County Superior Court. (McCormick Decl. (Dkt. # 7) Ex. B. (Compl.).) BANA removed the case to the Western District of Washington. *Wilson v. Bank of America N.A. Trust GSR2007-0A1*, No. C-11-2146MJP (W.D. Wash March 16, 2007) ("*Wilson I*"). The Wilsons' complaint in that case contained substantially similar allegations to those in the instant complaint:

- That the Wilsons made numerous requests to BANA asking that BANA identify the investor(s) of the Loan and that BANA responded on three separate occasions, each time identifying a different investor. (McCormick Decl. at 15 (Ex. B); Compl. ¶ 6.)

- That the "Pooling and Servicing Agreement" for "Trust GSR2007-OA1" required that all mortgage notes be placed in the trust "within a specific time frame," or by a "cut-off date." (McCormick Decl. at 16 (Ex. B); Compl. ¶ 8-c-2.)

- That BANA intentionally failed to disclose to the Wilsons the identity of the holder of the Loan's promissory note. (McCormick Decl. at 18 (Ex. B); Compl. ¶ 9.)

- That BANA does not know who the Loan's "Holder in Due Course" is and that, therefore, the mortgage is "unsecured and no longer negotiable." (McCormick Decl. at 18-19 (Ex. B); Compl. ¶¶ 11, 13.)

In addition to a claim for quiet title, the Wilsons alleged that BANA violated its duty of good faith and fair dealing. (McCormick Decl. at 18-19 (Ex. B).)

On March 16, 2012, the court in *Wilson I* issued an order dismissing the Wilsons' claims without prejudice. (*Id.* at 10 (Ex. A).) The court dismissed the Wilsons' quiet title claim because they failed to allege they had paid off the Loan or that BANA made any claim to the Property. (*Id.* at 8.) The court dismissed the Wilsons' breach of duty of good faith claim because BANA had no duty to produce the Loan's promissory note upon the Wilsons' demand. (*Id.* at 10.) Finally, the court rejected the Wilsons' attempted RESPA claim because they first raised it in their response to BANA's motion to dismiss, rather than in their complaint. (*Id.* at 10.)

The Wilsons filed the instant "COMPLAINT FOR FRAUD" on September 20, 2012. (Compl. at 1.) In addition to re-stating many of the factual allegations made in the prior suit, the Wilsons assert a fraud claim. (*Id.* ¶¶ 9, 11.) The Wilsons allege that BANA and DBNTC conspired to fraudulently execute and record the Assignment from MERS to DBNTC in order to "cause Plaintiffs to relinquish the property to the Defendants under false pretenses." (*Id.* ¶ 11.)

### III.   DISCUSSION

Even liberally construed,[4] the Wilsons' complaint does not plainly state their claims. Fed. R. Civ. P. 8(a)(2). The court concludes that the complaint asserts only a

---

[4] Because the Wilsons are proceeding *pro se*, the court liberally construes their pleadings. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

cause of action for fraud.[5]  The complaint contains numerous legal conclusions among its factual allegations and does not specifically name any other causes of action, nor can the court discern any other causes of action.  The Wilsons' claim for fraud is premised on the following allegations:

1. That Defendants conspired to fraudulently assign the Deed of Trust to DBNTC so that DBNTC could "gain an unfair advantage" with the Wilsons in negotiations over the Loan, in an attempt to force the Wilsons to "relinquish the property to Defendants under false pretenses."[6]  (Compl. ¶¶ 9, 11.)

2. That Defendants improperly transferred the Deed of Trust separate from the Loan's promissory note.  (*Id.* ¶ 8-a.)

3. That MERS lacked authority to transfer the Deed of Trust to DBNTC. (*Id.* ¶ 8-e.)

4. That Defendants lack clear title and are not "holders in due course" of the Loan.  (*Id.* ¶¶ 8-c, 8-d, 13.)

The Wilsons' also attempt to raise an additional claim in their response to Defendants' motion to dismiss:

5. That Defendants failed to send required disclosures to the Wilsons after acquiring the loan, in violation of Regulation K, 12 C.F.R. § 226.39 and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g).  (Resp. at 3.)

---

[5] The complaint is captioned "COMPLAINT FOR FRAUD."  (Compl. at 1)

[6] The Wilsons do not allege that they actually relinquished their home to Defendants; rather, they face the "threatened loss of their home."  (Compl. ¶ 14.)

Defendants argue that all of the claims are barred by the doctrine of *res judicata*; that the Wilsons inadequately plead fraud as a matter of law; and that MERS's assignment of the Deed of Trust was not, in fact, fraudulent as a matter of law. (Mot. at 2.) Defendants argue that any amendment to the complaint would be futile and ask the court to dismiss the Wilsons' complaint in its entirety. (Mot. at 6.)

**A. Article III Standing**

The court DISMISSES the Wilsons' claims WITHOUT PREJUDICE on grounds that they lack Article III standing. Defendants did not raise the issue. (*See generally* Mot.) Although not raised by the parties, the court must consider standing *sua sponte*.[7] *See Columbia Basin Apartments Ass'n v. City of Pasco*, 268 F.3d 791, 796 (9th Cir. 2001) (stating that courts are "obliged" to consider standing *sua sponte* as a matter of Art. III's case-or-controversy requirement); *see also City of L.A. v. Lyons*, 461 U.S. 95, 101

---

[7] The court need not notify the parties of its intent to dismiss for lack of subject matter jurisdiction. "While a party is entitled to notice and an opportunity to respond when a court [*sua sponte*] contemplates dismissing a claim on the merits . . . it is not so when the dismissal is for lack of subject matter jurisdiction." *Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*, 336 F.3d 982, 985 (9th Cir. 2003) (internal citations omitted) (upholding district court's *sua sponte* dismissal of plaintiff's complaint without notice where court lacked jurisdiction based on amount-in-controversy requirement). Further, a court is not required to give a plaintiff notice of *sua sponte* dismissal, even on the merits, if the amendment of the claim would be futile. *See Omar v. Lea–Lane Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief."). Here, notifying the Wilsons that the court dismisses their complaint based on their lack of standing would be unnecessary because, even if the Wilsons amend their complaint to properly plead standing, any amendment of their fraud claim would be futile. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 335–36 (5th Cir. 2002) (Benavides, J., specially concurring) (reasoning that potential prejudice from lack of notice of *sua sponte* dismissal was "*de minimis*" where plaintiffs' response to notice would be futile).

ORDER- 7

(1983) ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy). If the Wilsons lack Article III standing, then this court lacks subject matter jurisdiction over their claims. *Braunstein v. Ariz. Dept. of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012).

The court analyzes dismissal for lack of standing under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Under Rule 12(b)(1), the court must accept all material allegations in the complaint and must construe the complaint in favor of the Wilsons. *Id.* at 1068. While "general factual allegations of injury resulting from the defendant's conduct may suffice," a plaintiff cannot rely on "bare legal conclusions to assert injury-in-fact." *Id.* at 1068-69 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561(1992)).

To demonstrate standing to sue in federal court, a plaintiff must show (1) that he or she has suffered an injury in fact; (2) that the injury is traceable to the conduct complained of; and (3) a likelihood that the injury would be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61 (1992). The burden of establishing standing, which rests on the party invoking federal court jurisdiction, varies depending upon the stage at which standing becomes an issue. *Id.* at 561. At the pleading stage, the court looks only to the sufficiency of the allegations in the pleadings. *Id.*

The Wilsons have not alleged imminent injury and therefore lack standing. (Compl. ¶ 14). The Wilsons allege that they face the "threatened loss of their home," but they have not pled sufficient facts demonstrating that any of the named defendants have

begun or even threatened foreclosure proceedings.  The Wilsons have not alleged that any defendant sent a notice of foreclosure or appointed a trustee to initiate non-judicial foreclosure of their Property; which particular defendant (if any) sent the notice; when the notice of foreclosure (if any) was sent; when an alleged foreclosure sale (if any) is scheduled to occur; or if any defendant has actually foreclosed on the Loan.  *Cf. Tully v. Bank of Am.*, No. 10-4734, 2011 WL 1882665, at *5 (D. Minn. May 17, 2011) (dismissing complaint for lack of Article III standing where plaintiffs alleged defendants issued notices of foreclosure, but did not allege when the notices were published, whether foreclosure sales were scheduled to occur, or whether defendants had already foreclosed homes); *see also Bisson v. Bank of Am., N.A.*, No. 12-cv-0095JLR (W.D. Wash. Jan. 15, 2013) (dismissing claims for lack of standing where plaintiffs did not allege they were currently subject to foreclosure proceedings).

      The Wilsons allege Defendants committed fraud "in an attempt to illegally move forward with foreclosing on Plaintiffs [sic] property."  (Compl. ¶ 8.)  Even drawing all inferences in favor of the Wilsons, this bare assertion implies only that one of the three named defendants *might* go forward with foreclosure.  The Wilsons' injuries are thus speculative.  *See Lujan*, 504 U.S. at 560 (stating that injuries cannot be "hypothetical" or "conjectural").  The Wilsons' other claims of injury—the "threatened" loss of their loan payments to-date and the "threat" of damage to their credit report—are consequences of the "threatened" foreclosure and are therefore part of the same speculative injury.  Without pleading any facts suggesting that these "threats" are likely to occur, the Wilsons' allegations do not rise to the level of an actual or imminent injury.

ORDER- 9

Because the Wilsons' threadbare allegations of injury do not amount to injury-in-fact, the court DISMISSES the Wilsons' complaint WITHOUT PREJUDICE for lack of Article III standing, pursuant to Federal Rule of Civil Procedure 12(b)(1).

Normally, "[a] *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). Here, however, the Wilsons' amendment of their complaint would be futile. *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) ("[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile.") Even if the Wilsons properly amend their complaint to plead Article III standing, the Wilsons' complaint nevertheless fails to state a claim for fraud and any amendment of their fraud claim would be futile. Because the Wilsons claim for fraud fails on other grounds, granting leave to amend for purposes of properly alleging Article III standing would be futile.

**B. Futility of Amendment**

Even if the Wilsons amended their complaint to properly plead Article III standing, they cannot allege a fraud claim as a matter of law. For the reasons discussed below, the court finds that any amendment of the complaint re-stating the fraud claim would be futile. The Wilsons allege that they do not believe the Assignment is valid and have taken no actions in reliance on it to their determent. Further, the Wilsons' theories as to why the Assignment is fraudulent are not themselves causes of action and fail to establish fraud as a matter of law.

### 1. Sufficiency of the Wilsons' Fraud Pleading

A plaintiff claiming fraud must plead the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b). A pleading is sufficient under Federal Rule of Civil Procedure Rule 9(b) only if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

Courts hold allegations of *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, Rule 9(b) applies with equal strength to defendants sued by *pro se* litigants. *Ready v. Nuance Commc'ns, Inc.*, No. 11-CV-05632, 2012 WL 692414, at *3 (N.D. Cal. Mar. 2, 2012) (citing *Kelley v. Rambus, Inc.*, 384 Fed. Appx. 570, 573 (9th Cir. 2010) (unpublished)).

The Wilsons have not pleaded the circumstances of Defendants' allegedly fraudulent actions with the required particularity. In Washington, fraud requires that the plaintiff prove: (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4)

ORDER- 11

the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage. *Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012).

The Wilsons do not allege with any particularity what the nature of the alleged fraud is. The complaint contains a myriad of conclusory accusations and unsupported legal conclusions: that Defendants colluded to undermine the chain of title, that Defendants knew securitization of the Loan would not result in a clear chain of title, that MERS lacked authority to transfer the Deed of Trust, and that "[a] Deed of Trust has no assignable quality independent of the debt." (Compl. ¶¶ 8-a, 8-e, 9, 10.) Added up, the string of unsupported allegations do not specify the "who, what, when, where and how" of the supposed fraud.

But even if the Wilsons had properly pleaded that Defendants knowingly made a false misrepresentation in the Assignment, they cannot, as a matter of law, show they relied on Defendants' representations to their detriment. The Wilsons fail to allege in their pleadings that they took any actions in reliance on the allegedly fraudulent Assignment. The Wilsons allege that Defendants executed the Assignment with the "intent to" induce their reliance on it (*see id.* ¶ 11), but they fail to allege any actual detrimental reliance. The Wilsons might have been entitled to leave to amend for purposes of alleging this element, if appropriate, were it not for their representation to the contrary in their response memorandum. In their response, the Wilsons explain that

ORDER- 12

"[h]ad Plaintiffs not diligently researched and educated themselves regarding securitization and the specifics of . . . their loan, Plaintiffs would be relying on the information Defendants have provided in the [Assignment]." (Resp. at 5.) The Wilsons cannot demonstrate the required elements of ignorance of falsity or reliance when they explicitly admit they did not rely on the allegedly fraudulent Assignment. "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." Restatement (Second) of Torts § 541 (1965).

Further, the Wilsons cannot show that the purported fraudulent Assignment was the proximate cause of their alleged damages. *See Turner v. Enders*, 552 P.2d 694, 697 (Wash. Ct. App. 1976) (holding that damages for fraud are measured by all losses proximately caused by the fraud). The Wilsons do not allege that they would have taken any alternate course of action but for Defendants' alleged fraud. As with reliance, the Wilsons admit that the allegedly fraudulent Assignment did not cause them damages. They state that Defendants "hoped to" take their home away using the Assignment, but that the Wilsons knew the Assignment to be a fraud, so they refused to give up their home to BANA. (Resp. at 6.)

Finally, the Wilsons claim that they face damages including the "threatened loss of their home," the loss of equity in their home, and potential damage to their credit report. (Comp ¶ 14.) But the Wilsons allege no facts demonstrating how these damages flow from Defendants' alleged misrepresentation. They do not allege the Assignment caused them to enter into the Loan, nor do they allege it caused them to default on the loan. To the extent the Wilsons are faced with the threat of foreclosure, that threat results from

ORDER- 13

1  their own default, not from the alleged misrepresentation. Further, the Wilsons fail to
2  allege BANA or DBNTC has attempted to foreclose or that foreclosure is imminent. (*Id.*)
3     For all of the reasons above, the Wilsons have failed to plead fraud. Thus, even if
4  the Wilsons had standing, the court would dismiss their complaint. Ordinarily, on a
5  motion to dismiss, the court should liberally grant leave to amend. Fed. R. Civ. P.
6  15(a)(2); *Mirmehdi*, 689 F.3d at 985. When amendment would be futile, however, the
7  court need not grant leave to amend. *Mirmehdi*, 689 F.3d at 985. Here, amendment of
8  the complaint would be futile. The Wilsons cannot plead reliance, a required element of
9  their fraud claim, after they have admitted in their response memorandum that they have
10 not detrimentally relied upon Defendants' allegedly fraudulent document. The court
11 exercises its discretion to treat this statement as a judicial admission. *Gospel Missions of*
12 *Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003) (holding courts "have discretion to
13 consider a statement made in briefs to be a judicial admission . . . binding on . . . the trial
14 court.") (internal citations omitted); *see also Cook v. Reinke*, 484 Fed. Appx. 110, 112
15 (9th Cir. 2012) (unpublished) (holding that court could construe defendant's admission in
16 his memorandum to motion to dismiss as a binding judicial admission); *Purgess v.*
17 *Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in
18 briefs as binding judicial admissions of fact."). The Wilsons have argued themselves out
19 of court by asserting facts demonstrating they have no fraud claim. *Jackson v. Marion*
20 *Cnty.*, 66 F.3d 151, 153 (7th Cir. 1995) ("[A] plaintiff can plead himself out of court by
21 alleging facts which show that he has no claim.")
22

ORDER- 14

### 2. Authorization of MERS to Assign the Deed of Trust to DBNTC

Even if the Wilsons had properly pleaded the reliance and proximate cause elements of fraud, none of their theories supporting why the Assignment is fraudulent are legally cognizable. The Wilsons have not pleaded their theories with particularity, but to the extent the court can discern what they are, the Wilsons appear to advance three theories regarding the Defendants' fraud.[8] The Wilsons' theories, discussed in detail below, are not themselves causes of action. *Cf. Burkhart v. Mortg. Electronic Registrations Sys., Inc.*, No C11-1921RAJ, 2012 WL 4479577, at *5 (W.D. Wash. Sept. 28, 2012) (holding that plaintiff's claims that the deed of trust was not valid security for the note and that the deed of trust was inconsistent with the Deed of Trust Act were "legal conclusions," not grounds for relief from the court). Additionally, for the reasons discussed below, the court agrees with Defendants that the Wilsons' theories cannot support a fraud claim as a matter of law. For this reason, as well as because the Wilsons have pleaded themselves out of a fraud claim by alleging a lack of reliance, the court finds that any amendment of the complaint would be futile.

---

[8] In their response brief, the Wilsons also allege that they have never received notice of any successive transfers of the Loan, in violation of "FDIC 226.39." (Resp. at 3.) Liberally construed, the Wilsons appear to be alleging that Defendants violated Regulation K, 12 C.F.R. § 226.39 (2012) (promulgated under TILA, 15 U.S.C. § 1601 et seq. (2006)). That regulation states that an entity that acquires an existing mortgage loan by obtaining legal title to the debt obligation must make certain disclosures to the borrower within thirty days of acquiring the loan. *See* 12 C.F.R. § 226.39 (2012). Defendants correctly note that the Wilsons failed to state this claim in their Complaint. (Reply (Dkt. # 11) at 5.) The court thus declines to consider this claim. *See Schneider v. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a motion to dismiss.") (emphasis in original).

ORDER- 15

1         a.   <u>Separation of the Promissory Note from the Deed of Trust</u>

2       Defendants argue that the Wilsons' contention that the Deed of Trust cannot be

3 assigned independent of the note fails as a matter of law. (Mot. at 9.) The Wilsons'

4 claim that a Deed of Trust separated from the note cannot be assigned is a legal

5 conclusion, not a cause of action, and the Wilsons' offer no authority to support it.

6 (Compl. ¶ 8-a.) It is not a violation of Washington law to split the note from the deed.

7 *Zamzow v. Homeward Residential, Inc.*, No. C12-5755BHS, 2012 WL 6615931, at *1

8 (W.D. Wash. Dec. 19, 2012) (citing *Bain v. Metro. Mortgage Group, Inc.*, 285 P.3d 34,

9 48-49 (Wash. 2012)) . Further, the Wilsons did not clearly plead that the note for their

10 loan was at any point actually separated from the Deed of Trust. (*See generally* Compl.)

11 Even if they had, the Assignment itself states that DBNTC assumed all beneficial interest

12 in the Deed of Trust "together with the note(s) and obligations therein described." (*Id.*

13 Ex. G.) As such, the inference from the complaint is that either ownership of the note

14 was never separated from the Deed of Trust or, if it was, ownership is now united.

15       Even if ownership of the Deed of Trust is split from the note, the split only renders

16 the Deed of Trust unenforceable if the trustee initiating foreclosure is not an agent of the

17 lender. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir.

18 2011). The Wilsons have not alleged that any party has initiated foreclosure proceedings,

19 or that they have been injured in any way by the alleged split. *See id.* at 1042. Further,

20 the Wilsons cite no support for the proposition that separation of the note from the Deed

21 of Trust renders the note itself unenforceable or excuses them from paying on the note.

22 *See In re Reinke*, Bankruptcy No. 09-19609, 2011 WL 5079561, at *7 (W.D. Wash. Oct.

ORDER- 16

26, 2011) ("[T]he role of MERS as nominee under a deed of trust does not irreparably split the note from the deed of trust so as to render the note unsecured. In addition, the Court finds no statutory or common law in the State of Washington to suggest otherwise and none has been cited by Plaintiff.").

### b. Authority of MERS to Assign the Deed of Trust

The Wilsons assert that MERS lacked authority to transfer the Deed of Trust to DBNTC because MERS is the nominee of "an unknown lender." (Compl. ¶ 8-e.) Defendants argue that the Wilsons' contention is "non-sensical" because MERS had authority to transfer as nominee of Countrywide. (Mot. at 9.) Defendants misinterpret the Wilsons' argument. The Wilsons appear to be arguing that BANA did not know who owned the loan *at the time* MERS affected the transfer because by that time, Countrywide had ceased to exist and BANA had already securitized the loan. (*See generally* Compl. ¶ 8.) The Wilsons seem to be asserting either that MERS did not know who they were acting on behalf of, or that MERS was a sham beneficiary. (*Id.* ¶ 8-e.)

Either way, the Wilsons' argument is not relevant. "Even if MERS were a sham beneficiary, [the Wilsons' lender] would still be entitled to repayment of the loans and would be [a] proper part[y] to initiate foreclosure after the plaintiffs defaulted on their loans." *Cervantes*, 656 F.3d at 1044. [9] The Wilsons do not explain how they relied on

---

[9] The Washington Supreme Court recently held that MERS is not a lawful beneficiary under Washington's Deed of Trust Act, unless MERS holds the note underlying a Deed of Trust. *See Bain v. Metro. Mortgage Group, Inc.*, 285 P.3d 34, 36-37 (Wash. 2012). The *Bain* Court, however, "did not determine the legal effect of a deed of trust that unlawfully purported to name MERS as its beneficiary." *Burkart*, 2012 WL 4479577 at *4. The *Bain* Court did hold that

ORDER- 17

1  MERS's transfer to DBNTC to their detriment, nor do they plead any facts demonstrating

2  that either BANA or DBNTC knew the transfer was invalid.[10]  *Cf. Burkart*, 2012 WL

3  4479577, at *6 (dismissing similar claims).

4      c. <u>Clear Title to the Loan</u>

5      The Wilsons argue that BANA's assignment of the Loan to certain trusts violated

6  those trusts' Pooling and Servicing Agreements, and/or exposed BANA to a tax penalty,

7  and therefore, BANA must not have actually placed the Loan into the trusts. (Compl.

8  ¶ 8-c.) The Defendants argue that the Wilsons lack standing to allege a violation

9  concerning the actions of third parties and that the Wilsons' allegations do not show the

10 Assignment was invalid. (Mot. at 11.) The Wilsons do not cite any authority for the

---

characterizing MERS as the beneficiary is "potentially" an "unfair or deceptive act or practice" under the Washington Consumer Protection Act, but also emphasized that "a borrower may or may not be injured by the disposition of the note . . . and MERS may or may not have a causal role." *Bain*, 285 P.3d at 50-51. The *Bain* Court did not state, as the Wilsons allege here, that MERS is incapable of transferring its interest in a deed of trust and the Wilsons cite no authority for that proposition. *See generally id.* at 49. The only post-*Bain* Washington decision does not address the issue. *See Peterson v. Citibank, N.A.*, No. 67177-4-I, 2012 WL 4055809, at *4 (Wash. Ct. App. Sept. 17, 2012) (unpublished) (upholding dismissal of plaintiff's Consumer Protection Act claim for failure to allege injury resulting from assignment of MERS as beneficiary). The *Bain* Court stated that it "tended to agree," though did not formally decide, that MERS's violation of the Deed of Trust Act "should not result in a void deed of trust." *Id.* The Wilsons have not pleaded a Consumer Protect Act claim, nor have they pleaded any facts that would demonstrate a cognizable injury traceable to Countrywide's naming of MERS as a beneficiary. (*See generally* Compl.) The Wilsons, rather, make the conclusory allegation that MERS did not have the authority to transfer the Deed of Trust to DBNTC because of their unsupported legal conclusion that "[a] nominee of the owner of the note and mortgage may not effectively assign the note to another for want of an ownership interest in said note by nominee." (Compl. ¶ 8-e.) Even liberally construed, such conclusory allegations do not form any recognizable cause of action nor give the court a basis for determining if the *Bain* decision has any relevance to the Wilsons' claims.

[10] The Wilsons' allegations that Defendants' actions were "deliberate" and that they "knowingly" undermined the chain of title are conclusory allegations unsupported by any pleaded facts. (*See* Compl. ¶¶ 9, 12.)

ORDER- 18

proposition that Defendants were required to inform the Wilsons of their compliance with the Pooling and Servicing Agreement, nor do they explain why Defendants should have the burden of proving they correctly assigned the Loan. *See Mikhay v. Bank of Am.*, 2:20-cv-01464RAJ, 2011 WL 167064, at *2 (W.D. Wash. Jan, 12, 2011) ("Plaintiffs do not cite any obligation on [defendant] to inform Plaintiffs of its compliance with [the terms of a trust agreement] or explain why the burden . . . should be on [the defendant] to prove the propriety of its conduct."). Defendants are correct that the Wilsons lack standing to enforce the terms of a pooling and service agreement to which they are not a party. *See Brodie v. Nw. Trustee Srvs., Inc.*, No. 12-0469TOR, 2012 WL 4468491, at *4 (E.D. Wash. Sept. 27, 2012) (collecting cases). Further, the Wilsons cite no authority supporting their contention that BANA improperly securitized the Loan, nor do they suggest any injury resulting from the securitization of their loan. *Id.*

The Wilsons' argument that BANA somehow improperly securitized the Loan is irrelevant. "Securitization merely creates a separate contract, distinct from the Plaintiffs' debt obligations under the Note, and does not change the relationship of the parties in any way." *Bhatti v. Guild Mortg. Co.*, No. C11-0480JLR, 2011 WL 6300229, at *5 (W.D. Wash. Decl. 16, 2011).[11]

---

[11] Defendants also argue that the Wilsons' claims are barred by the doctrine of *res judicata* because their complaint raises the same issues, arising from the same transaction, raised in *Wilson I*. *Res judicata* "requires a final judgment on the merits" in a previous action. *Pederson v. Potter*, 11 P.3d 833, 835 (Wash. Ct. App. 2000). Here, the United States District Court for the Western District of Washington dismissed *Wilson I* without prejudice for failure to state a claim. (McCormick Decl. at 10.) *Wilson I* was not a "final judgment on the merits" for *res judicata* purposes under Washington law and, therefore, *res judicata* is inapplicable. *See*

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion (Dkt. # 6.) and DISMISSES the complaint WITHOUT PREJUDICE.

Dated this 23rd day of January, 2013.

JAMES L. ROBART
United States District Judge

---

*Russell v. Leslie*, 252 P. 151, 152 (Wash. 1927) (rejecting argument that *res judicata* applied where court in first suit dismissed action without prejudice); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[D]ismissal . . . without prejudice is a dismissal that does not operat[e] as an adjudication upon the merits . . . and thus does not have a res judicata effect.") (internal quotations omitted).